**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| CHARLES EARL SAMPSON, | § | |
| (TDCJ-CID #644861) | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-3381 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND OPINION**

Petitioner, Charles Earl Sampson, seeks habeas corpus relief under 28 U.S.C. § 2254,

challenging a conviction in the 221st Judicial District Court of Montgomery County, Texas.

Respondent filed a motion for summary judgment, (Docket Entry No. 17), and copies of the state

court record. Sampson has filed his response. (Docket Entry No. 25). After consideration of the

motion and response, the record, and applicable authorities, the court grants respondent's motion.

The reasons for this ruling are stated below.

**I.     Background**

A jury found Sampson guilty of the felony offense of burglary of a habitation. (Cause

Number 11-03-03464-CR). Finding five enhancement paragraphs to be true, the jury sentenced

Sampson to life imprisonment on April 19, 2011. The Ninth Court of Appeals of Texas affirmed

Sampson's conviction on January 4, 2012. The Texas Court of Criminal Appeals refused Sampson's

petition for discretionary review on May 13, 2012. Sampson filed an application for state habeas

corpus relief on March 26, 2013, which the Texas Court of Criminal Appeals denied without written order on August 28, 2013. *Ex parte Sampson,* Application No. 62,670-02 at cover.

On November 14, 2013, this court received Sampson's federal petition. Sampson contends that his conviction is void for the following reasons:

(1)   Appellate counsel, Adrienne Frazior, rendered ineffective assistance by failing to raise the issue of ineffective assistance of trial counsel for failing to challenge the enhancements. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 6); (Docket Entry No. 9, Memorandum, pp. 1-44).

(2)   The appellate court abused its discretion in ruling that the State had proven the Texas Penal Code Section 12.42(d) requirement. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 6); (Docket Entry No. 9-1, Memorandum, pp. 1-4).

(3)   Trial counsel, Michael McDougal, rendered ineffective assistance by failing to object and preserve the error of inconsistent testimony. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 7); (Docket Entry No. 9-2, Memorandum, pp. 1-9).

(4)   Appellate counsel rendered ineffective assistance by failing to raise the issue of ineffective assistance of trial counsel for eliciting harmful testimony that Sampson was on parole and had been to prison, and ineffective assistance of trial counsel for eliciting the harmful testimony. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 7); (Docket Entry No. 9-3, Memorandum, pp. 1-4).

(5)   Trial counsel rendered ineffective assistance by failing to object and preserve the error of prosecutorial misconduct for withholding the testimony of Officers Dodgen and Ott. (Docket

Entry No. 1, Petition for Writ of Habeas Corpus, p. 8); (Docket Entry No. 9-4, Memorandum, pp. 1-5).

(6)     Appellate counsel rendered ineffective assistance by improperly arguing an illegally admitted unadjudicated extraneous offense. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 8); (Docket Entry No. 9-4, Memorandum, pp. 6-18).

(7)     The trial court abused its discretion by admitting an illegal unadjudicated extraneous offense. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 8).

(8)     The prosecutor engaged in misconduct by suppressing evidence by denying Sampson a witness's identity and the ability to subpoena witnesses. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 8).

(9)     The trial court abused its discretion by illegally stacking his sentence without notice. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 8).

(10)    The trial court abused its discretion by allowing ambiguous double standard verdicts. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 8).

(11)    The trial court abused its discretion by allowing three different extraneous offenses in one single episode whereas Sampson did not testify at punishment. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 8-9).

(12)    Trial counsel rendered ineffective assistance by failing to object to the prosecutor making the jury promise to listen to both phases of trial before entering punishment. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9); (Docket Entry No. 9-5, Memorandum, pp. 1-7).

(13)    The prosecutor engaged in misconduct by making the jury promise to convict. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9).

(14)    Appellate counsel rendered ineffective assistance by failing to argue the preserved error concerning State's Exhibit 40. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9).

(15)    Trial counsel rendered ineffective assistance by failing to challenge the array of the jury. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9); (Docket Entry No. 9-5, Memorandum, pp. 8-10).

(16)    The trial court abused its discretion by allowing inconsistent material witness statements versus trial testimony. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9).

(17)    "Same as Ground 10." (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9).

(18)    Trial counsel rendered ineffective assistance by failing to object to an "impartial" jury. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9).

(19)    Appellate counsel rendered ineffective assistance by failing to argue the Texas Penal Code Section 12.42(d) issue that the jury had to find two of the previous paragraphs true. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9).

(20)    "Same as Ground 17." (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9).

(21)    "Same as Ground 12." (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9).

(22)    The trial court abused its discretion by denying the defense motion for an instructed verdict on the basis that the State failed to prove intent to commit theft. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 10).

(23)    The trial court abused its discretion by allowing the law of parole to be discussed during guilt/innocence and ineffective assistance of trial counsel for failing to object. (Docket Entry

No. 1, Petition for Writ of Habeas Corpus, p. 10); (Docket Entry No. 9-5, Memorandum, pp. 11-15).

(24) The prosecutor engaged in misconduct by asking the jury to put themselves in the place of the victim and ineffective assistance of trial counsel for failing to object. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 10); (Docket Entry No. 9-5, Memorandum, pp. 16-18).

(25) Trial counsel rendered ineffective assistance by failing to file a motion to suppress the illegal arrest. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 10); (Docket Entry No. 9-5, Memorandum, pp. 11-15).

(26) Trial counsel rendered ineffective assistance by tarnishing his credibility by advising him to plead not true to the enhancements he had just elicited testimony about. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 10).

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 6-10).

## II.    The Statement of Facts

The Ninth Court of Appeals summarized the factual background as follows:

> John Heimann, a Houston police officer and the son of Socorro Hermes, noticed a green truck in Socorro's driveway. He knew the truck did not belong to his mother, and he telephoned her. She was shopping, and indicated there was no one at her house. Heimann noticed the house had been broken into. When he went in, he saw Sampson walk out of the bedroom. Sampson was holding a pillowcase with "stuff" in it. Heimann told Sampson to get down on the ground. Sampson said he entered the house because he saw someone breaking in. While Heimann was calling for backup, Sampson fled. Heimann found him in the woods nearby.
> Deputy Suarez, who was called to the scene, testified the door of the residence was forced open. Suarez found a pillowcase containing jewelry and other items in the house. He found a flathead screwdriver

in Sampson's pockets. Suarez explained that this type screwdriver is used for prying open objects like a sliding glass door mechanism. Sampson testified that after he was paroled from prison, he lived with Jess Babbitt and his wife in the same neighborhood where Ms. Hermes lived. Sampson explained he had solicited work at Ms. Hermes' home on three prior occasions. He went there that day to ask about the possibility of working for her. He testified he entered her house because he saw a burglary in progress, and he wanted to check on Ms. Hermes. He testified he had no intent to commit theft and did not steal anything.

The prosecutor, like defense counsel, asked where Sampson went after he was released on parole from prison. Sampson explained that he lived with the Babbitts. The State then asked Sampson if the Babbitts had asked him to leave their home. Sampson stated he had not been asked to leave, but was told he should try to find his own place to live. He testified he moved to Waller.

Jess Babbitt testified he met Sampson through a prison ministry. Like Sampson, Babbitt explained that upon Sampson's release from prison, Sampson lived with the Babbitts. Sampson did odd jobs around the neighborhood and worked for an auto parts store. Defense counsel asked if Babbitt "kicked" Sampson out of the house. Babbitt responded, "No." The State then questioned Babbitt further and, over defendant's objection, obtained the trial court's permission to ask Babbitt about a purported theft at his home.

*Sampson v. State,* No. 09-11-00247-CR, 2012 WL 34457, at *1 (Tex. App. -- Houston [9th Dist.]

2012, pet. ref'd)(not designated for publication).

## III.    The Applicable Legal Standards

This court reviews Sampson's petition for writ of habeas corpus under the federal habeas

statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28

U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d

409, 413 (5th Cir. 1997), citing *Lindh v. Murphy*, 521 U.S. 320 (1997).

Sections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact,

questions of law, and mixed questions of fact and law that result in an adjudication on the merits.

An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000). A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under section 2254(e)(1) unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia,*

454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Sampson is proceeding *pro se.* A *pro se* habeas petition is construed liberally and not held to the same stringent and rigorous standards as pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Sampson's state and federal habeas petitions. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## IV.    The Claim of Ineffective Assistance of Trial Counsel
### (Grounds 3, 4, 5, 12, 15, 18, 24, 25, & 26)

To establish an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 68 (1984). Whether counsel's performance was deficient is determined by an objective standard of reasonableness. *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999).

"[S]crutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

"[C]ounsel is strongly presumed to have rendered adequate assistance and to have made all

significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[S]trategic

choices made after thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable." *Id.* at 690-91; *see also United States v. Jones*, 287 F.3d 325, 331 (5th

Cir.)("Informed strategic decisions of counsel are given a heavy measure of deference and should

not be second guessed."), *cert. denied*, 537 U.S. 1018 (2002); *Lockett v. Anderson*, 230 F.3d 695,

714 (5th Cir. 2000) (*Strickland* requires deference to counsel's "informed strategic choices"). "So

long as counsel made an adequate investigation, any strategic decisions made as a result of that

investigation fall within the wide range of objectively reasonable professional assistance." *Smith v.

Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (internal quotation marks and citation omitted).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for

constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire

trial with obvious unfairness." *Jones*, 287 F.3d at 331. To overcome the deference given to

informed strategic decisions, a petitioner must show that his counsel "blundered through trial,

attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable

alternative course, or surrendered his client." *Id.*; *see also Moore v. Johnson*, 194 F.3d 586, 615 (5th

Cir. 1999) ("*Strickland* does not require deference to those decisions of counsel that, viewed in light

of the facts known at the time of the purported decision, do not serve any conceivable strategic

purpose.").

Even if a petitioner establishes that his counsel's performance was deficient, he must also

establish that "prejudice caused by the deficiency is such that there is a reasonable probability that

the result of the proceedings would have been different." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). A petitioner must show that the prejudice made the trial outcome "fundamentally unfair or unreliable." *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364 (1993)).

The state habeas court found that the affidavit of McDougal was credible and that: "2. The applicant has failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel during his trial. *Strickland v. Washington,* 466 U.S. 668, 669 (1984); *Hernandez v. State,* 988 S.W.2d 770, 772 (Tex. Crim. App. 1999)." (Docket Entry No. 12-13, p. 61).

Under AEDPA, this court must give proper deference to the state court's determination that trial counsel rendered effective assistance. *See Ladd v. Cockrell*, 311 F.3d 349, 351 (5th Cir. 2002). Because the state court properly identified *Strickland* as the governing legal principle, the "unreasonable application" prong of section 2254(d)(1) provides the standard that governs this court's review of the state court's decision on Sampson's ineffective counsel claims. *Bell v. Cone*, 535 U.S. 685, 694-695 (2002). This court must determine whether the state court's application of *Strickland* was objectively unreasonable. *Id.*; *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en banc), *cert. denied*, 537 U.S. 1104 (2003). Under section 2254(d)(1), "[w]e have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of *Strickland* is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (quoting *Neal*, 286 F.3d at 236). "The federal-habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002).

The court will address each of Sampson's nine claims based on ineffective assistance of trial counsel as listed in Section I.

**A.      Ground 3**

Sampson alleges that the State's primary witness, Officer Keith John Heimann, changed his written testimony during a trial proceeding to add elements of theft not complained or alleged in his original witness statement.  Officer Suarez filed the offense report.  He also testified in open court that Officer Heimann never told him that Sampson ever attempted to steal any personal property from Officer Heimann.  Sampson complains that McDougal failed to make a specific objection and receive a ruling concerning inconsistent trial testimony versus witness written testimony during a trial proceeding.  Sampson claims that had McDougal specifically objected to the court concerning his objection, there was a possibility that the trial court would have dismissed Officer Heimann's witness statement.

McDougal cross-examined Officer Heimann as follows:

> Q.      And you gave a statement.  And then you also told Officer Suarez certain things, right?
>
> A.      Correct.
>
> Q.      And I guess he got them down the best he could.  Is that the statement you gave?
>
> A.      That's the statement I gave.
>
> Q.      And nowhere in this statement did you say that when you saw him come out of the back bedroom he had this pillow in his hand? You didn't say that in there, did you?
>
> A.      I don't recall saying that in the statement.

Q.   Okay. You didn't tell them that he had the pillowcase in his hand when you first saw him, right?

A.   Correct.

Q.   And neither one of these two things that Officer Suarez -- you never told Officer Suarez that you saw the pillowcase in his hands, did you?

A.   Yeah, I am sure I told him. But it was laying in the hallway right where he went to the ground after I told him.

Q.   Well, it was -- was it laying there before he got on the ground, or did you actually see him with the pillowcase? I mean, you didn't say you did.

A.   I saw this man with a pillowcase. He had no idea I was in the house. When he came out of the back bedroom, he had the pillowcase in his right hand. He exited the bedroom into the hallway. He had to see me.  Saw me.   I told him to get down on the ground. As he is getting down on the ground, he dropped the pillowcase exactly where we said and that's exactly where he laid down.

Q.   Why isn't that in your statement then?

A.   There could be a lot of things that are not in there.  I just -- that's a general statement.

. . .

Q.   (By Mr. McDougal) I think you have already identified defense Exhibit 3 as your statement.

A.   Correct. Yes, sir.

MR. McDOUGAL: I would offer State's (sic) Exhibit 3, Judge.

THE COURT: Any objection?

MS. CULBERSON: No, Judge.

THE COURT: Defendant's Exhibit 3 will be admitted for all purposes.

(Defendant's Exhibit No. 3 Admitted)

      Q.    (By Mr. McDougal) And nowhere in defense Exhibit do you ever say you saw Charles Sampson with a pillowcase in his hand, do you?

      A.    No, I do not believe I did say that in that statement.

(Docket Entry No. 11-12, pp. 82-85).

McDougal provided an affidavit to the state habeas court in which he testified as follows:

"1.    Allegation: I failed to object to a witness offering inconsistent testimony.

    Answer: There was legal objection to be made. I did point out to the Court and to the jury the inconsistencies in Keith Heimann's testimony, and emphasized the same." (Docket Entry No. 12-12, p. 4).

The state habeas court found: "7. McDougal did not object to inconsistent testimony by a witness because no legal objection to inconsistent testimony exists." (Docket Entry No. 12-13, p. 50).

The state habeas court concluded: "6. McDougal was not ineffective for failing to make objections that are spurious." (Docket Entry No. 12-13, p. 51).

Sampson cannot establish an ineffective assistance of counsel claim because he has not shown that McDougal's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 68 (1984).

Sampson is not entitled to habeas relief on this claim.

**B.    Ground 4**

Sampson alleges ineffective assistance of trial counsel for eliciting harmful testimony that he was on parole and had been to prison. (Docket Entry No. 1, p. 7; Docket Entry No. 9-3, pp. 1-4).

McDougal provided an affidavit to the state habeas court in which he testified as follows:

> 2.     Allegation: I elicited testimony from applicant that he had been previously convicted of burglary.
>     Answer: I did elicit such testimony from applicant, but only after explaining to him that if he wished to testify that his priors would be admissible to impeach him. I did file a motion with the Court which limited the State in offering impeachment evidence of applicant's prior convictions. The Court granted my motion with the sole exception of the burglary conviction. After explaining to applicant that the State would be able to prove this up on his cross-examination, if he testified, he decided to testify. I elicited the testimony in an attempt to limit the damage the conviction evidence would have on the jury if it came on direct rather than cross.

(Docket Entry No. 12-12, p. 4).

The state habeas court concluded: "7. McDougal was not ineffective for eliciting information concerning the applicant's previous convictions that were admissible for purposes of impeachment after the applicant chose to testify. This tactic is well-known, sound trial strategy. *Martin v. State,* 265 S.W.3d 435, 443 (Tex. App. ---Houston [1st Dist.] 2007, no pet.)." (Docket Entry No. 12-13, p. 51).

Sampson cannot establish an ineffective assistance of counsel claim because he has not shown that McDougal's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington,* 466 U.S. 668, 68 (1984).  Sampson is not entitled to habeas relief on this claim.

## C.     Ground 5

Sampson alleges ineffective assistance of trial counsel for failing to object and preserve error of prosecutorial misconduct for withholding the testimony of Officers Dodgen and Ott. (Docket entry No. 1, p. 8; Docket Entry No. 9-4, pp. 1-5).  He claims that these officers were the first officers on

the scene, and their testimony would have been favorable to the defense. Sampson claims that they would have testified that they did not recover the flat-head screwdriver, which was used to pry open the sliding door from Sampson's person.

McDougal provided an affidavit to the state habeas court in which he testified as follows: "3.    Allegation: I failed to object to "professional misconduct."

Answer: I did interview the Stagecoach police officers and learned that their testimony would be very harmful to applicant. I told him this. It was a mutual decision to not call the Stagecoach officers." (Docket Entry No. 12-12, p. 4).

The state habeas court found: "8. McDougal and the applicant discussed calling the officers from the Stagecoach Police Department, and decided against such an action because their testimony would be prejudicial to the applicant." (Docket Entry No. 12-13, p. 50). The state habeas court concluded: "8. McDougal was not required to call witnesses whose testimony would not be favorable to the applicant." (Docket Entry No. 12-13, p. 52).

Sampson cannot establish an ineffective assistance of counsel claim because he has not shown that McDougal's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 68 (1984).  After interviewing the officers from the Stagecoach Police Department, McDougal determined that their testimony would be very damaging. McDougal made a tactical decision not to call officers from the Stagecoach Police Department.  This court's scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689.  This court gives McDougal's informed strategic decisions a heavy measure of deference and will not second-guess them.

### D.      Ground 12

Sampson alleges ineffective assistance of counsel for failing to object to the prosecutor's making the jury promise to listen to both phases of trial before entering punishment. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9; Docket Entry No. 9-5, Memorandum, pp. 1-7).

The defendant in a criminal case has a constitutional right to a trial by "an impartial jury." *Sanchez v. State,* 165 S.W.3d 707, 712 (Tex. Crim. App. 2005) (quoting U.S. Const. amend. VI; Tex. Const. art. I, § 10). Thus, one purpose of the voir dire process is to determine if grounds exist for challenging any venire panelists for cause because they are biased for or prejudiced against one of the parties or the relevant law. *See id.* at 710–11. A proper voir dire question attempts to discover any preexisting bias or prejudice of the panelists, while an improper commitment question seeks to create a bias or prejudice in the panelists before they have heard the evidence. *Id.* at 712. Accordingly, questions that require a venire panelist to promise that he will base his decisions on some specific set of facts before he has heard any evidence should be allowed only when the law requires such a commitment. *Id.* The reason for prohibiting improper commitment questions is to ensure that the jury will listen to the evidence with an open mind and render a verdict based upon all the evidence heard in its proper context. *Id.*

Some examples of commitments that the law requires jurors to make include commitments to: consider the full range of punishment, follow the law requiring disregard of illegally obtained evidence, follow the court's instruction requiring corroboration of accomplice witness testimony, and follow the law precluding them from holding defendant's failure to testify against him. *Standefer v. State,* 59 S.W.3d 177, 181 & n.16. (Tex. Crim. App. 2001).

The trial court has broad discretion over the jury-selection process because "voir dire could go on forever without reasonable limits." *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Appellate courts review a trial court's restrictions on particular questions for an abuse of discretion. *Id.* at 38. A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry. *Id.* The state habeas court found: "9. McDougal did not object to the State asking the jury to listen to all the evidence before rendering a verdict." (Docket Entry No. 12-13, p. 50). The state habeas court concluded: "9. McDougal was not required to make frivolous objections to the State's voir dire. *Edmond v. State,* 116 S.W.3d 110, 115 (Tex. App. - Houston [14th Dist.] 2002, pet. ref' d)." (Docket Entry No. 12-13, p. 52).

The prosecutor properly asked the jury to listen to all of the evidence before rendering a verdict. The prosecutor did not pose an improper commitment question in an effort to create a bias or prejudice in the panelists before they had heard the evidence. Any objection to the prosecutor's question would have been futile. McDougal cannot be deficient for failing to press a frivolous point. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *Green v. Johnson,* 160 F.3d 1029, 1036-37 (5th Cir. 1998), *cert. denied,* 525 U.S. 1174 (1999)(citing *Sones v. Hargett,* 61 F.3d 410, 415 (5th Cir. 1995)).

Sampson cannot establish an ineffective assistance of counsel claim because he has not shown that McDougal's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 68 (1984).

E.      Ground 15

Sampson alleges that counsel was ineffective for failing to challenge the array of the jury. (Docket Entry No. 1 p. 9; Docket Entry No. 9-5, pp. 8-10). He complains that there was only one African-American, and he was disqualified. (Docket Entry No. 9-5, p. 9).

In *Taylor v. Louisiana,* 419 U.S. 522 (1974), the Supreme Court held that the Sixth Amendment right to jury trial applies to the States through the Fourteenth Amendment thereby requiring that "[t]he selection of a petit jury from a representative cross section of the community is an essential component for the Sixth Amendment right to a jury trial." Thereafter in *Duren v. Missouri,* 439 U.S. 357 (1979), the Supreme Court laid out the three criteria necessary to establish a *prima facia* violation of the fair-cross-section requirement, to-wit:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to *systematic exclusion* of the group in the jury-selection process.

*Id.* at 364. (Emphasis supplied)

Later, faced with a number of fair-cross-section challenges, the Supreme Court held that the mere differential between the percentage of members of a single class of minorities within an individual jury panel and the percentage of members of such minority class in the general public, is not sufficient evidence of "selective exclusion" of class members. *Berghuis v. State,* 559 U.S. 314 (2010) (mere proof of percentage disparities in representation is not sufficient to establish the "systematic exclusion" factor under *Duren*); *May v. State,* 738 S.W.2d 261, 269 (Tex. Crim. App. 1987) (disproportionate representation in a single panel does not demonstrate the systematic

exclusion of distinctive groups in violation of appellant's rights under the Sixth Amendment).

McDougal provided an affidavit to the state habeas court in which he testified as follows:

> 4.      Allegation: I failed to challenge venire panel for not being representative of the community because only one black person was selected in the array.
>         Answer: There was no legal challenge to be made. Article 35.07, Tex. Code Crim. Pro. provides that the only challenge which may be made to the jury array is that the officer summoning the panelists did so with the intent to secure a conviction or an acquittal. There was no evidence that such had occurred. My experience in Montgomery County for the past 30 years is that there are few, if any, black venirepersons on the jury panels. Those who do show up are generally excused for various causes. I felt fortunate that applicant did have one black venireperson on his jury.

(Docket Entry No. 12-12, p. 4).

The state habeas court concluded: "11. Underrepresentation of a distinctive group on a single venire panel does not give rise to a constitutional violation. *Weeks v. State,* No. 09-11-00642-CR, 2013 WL 980254 (Tex. App. - Beaumont 2013, pet. filed). Thus, McDougal was not ineffective for failing to challenge the venire panel array." (Docket Entry No. 12-13, p. 52).

Disproportionate representation in a single panel does not demonstrate the systematic exclusion of distinctive groups in violation of Sampson's rights under the Sixth Amendment. Any objection to the jury panel would have been futile.   Sampson cannot establish an ineffective assistance of counsel claim because he has not shown that McDougal's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 68 (1984).

Sampson is not entitled to habeas relief on this claim.

### F.      Ground 18

Sampson alleges ineffective assistance of trial counsel for failing to object to an "impartial" jury. (Docket Entry No. 1, p. 9).  Again, his claim that the jury was not impartial is conclusory.  In *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983), the Fifth Circuit held that conclusory allegations are an inadequate basis for federal habeas relief, stating that "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Id.*

Sampson is not entitled to habeas relief on this claim.

### G.      Ground 24

Sampson alleges that McDougal was ineffective for failing to object to the prosecution's argument at closing that Sampson chose to make his living off of their hard work.

Permissible closing statements generally fall within one of four areas: (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to argument of opposing counsel, or (4) a plea for law enforcement. *See Brown v. State,* 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).  A closing statement that exceeds these bounds is improper, and the trial court commits error when it (1) overrules an objection to the statement, (2) refuses an instruction to disregard the statement after sustaining an objection to the statement, or (3) fails to grant a mistrial necessitated because of the statement. *See Watts v. State,* 371 S.W.3d 448, 457 (Tex. App. - Houston [14th Dist.] 2012, no pet.).

Sampson contends that the prosecutor encouraged the jurors "to place themselves in the shoes of the victim" and that the prosecutor's closing statement was therefore improper.  The prosecutor

did not ask the jurors to render a verdict based on what the victim desired. Instead, she urged them to convict Sampson because the evidence supported a verdict of guilty. The prosecutor's closing statement qualified as a plea for law enforcement. *Cf. Ayala v. State,* 267 S.W.3d 428, 435–36 (Tex. App. - Houston [14th Dist.] 2008, pet. ref'd) (closing statement was a proper plea for law enforcement when the prosecutor said, "I hope you also think of Carmen, and her children, and Juan, and the justice they're entitled to. . . . And on this day, when you're in the 12 seats, I ask you to deliver them that justice. . . . Convict that man of the offense that he deserves to be convicted of, capital murder. There's nothing, nothing else that is fair and right in this case."); *Smith v. State,* 846 S.W.2d 515, 517–18 (Tex. App. - Houston [14th Dist.] 1993, pet. ref'd) (closing statement was a proper plea for law enforcement when the prosecutor encouraged the jury to "do the right thing" before invoking concerns about crime on the streets and the impact of that crime on members of the community). The prosecutor made the following closing argument:

> I told You that I had to prove that it happened on a certain date and in Montgomery County and that he was the Defendant. Well, you know that I have done all of that. You have had several people identify him and he identified himself.
> And really, when you get down to it, you see that the only thing we are fighting about today is not whether he went into the house, it is not whether he went into the house without consent; it is whether he went in there with the intent to commit theft.
> And, ladies and gentlemen, if you have any doubt about that, this (indicating) gets rid of that. Mr. Babbitt told you this came from his house.
> This very likely was in the toolbox that Mr. Babbitt gave this man so that he could try to earn an honest living on his way out of prison. But he chose to use it to earn his living the way he wants to and the way he is used to living on the backs of your hard work, taking your personal things.
> You have got the pictures, you have got the maps, you know where the stuff was found, where the pillowcase was found and where the Defendant was found.

(Docket Entry No. 11-13, Reporter's Record, Volume 4, pp. 63-64).

Any objection to the prosecutor's closing argument would have been futile. Sampson cannot

establish an ineffective assistance of counsel claim because he has not shown that McDougal's

performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington*,

466 U.S. 668, 68 (1984).

Sampson is not entitled to habeas relief on this claim.

### H.      Ground 25

Sampson alleges ineffective assistance of counsel for failing to file a motion to suppress the

illegal arrest. (Docket Entry No. 1, p. 10; Docket Entry No. 9-5, pp. 11-15).

McDougal provided an affidavit to the state habeas court in which he testified as follows:

> Allegation: I did not file a motion to suppress an illegal arrest.
>
> Answer: I did fully investigate the applicant's arrest by interviewing the applicant; by thoroughly reviewing the State's file; and by interviewing the Stagecoach police officers. It was legal and lawful. There was no legal objection to be made to his arrest.

(Docket Entry No. 12-12, p. 5).

The state habeas court found: "12. McDougal examined the applicant's case file, and he did

not find any grounds for arguing that the applicant's arrest was illegal." (Docket Entry No. 12-13,

p. 50). The state habeas court concluded: "13. McDougal was not ineffective for refusing to

challenge the applicant's arrest, as the arrest was lawful. Tex. Code Crim. Proc. Ann. art. 14.01(a)

(West 2005)." (Docket Entry No. 12-13, p. 52).

Sampson cannot establish an ineffective assistance of counsel claim because he has not shown that McDougal's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 68 (1984).

Sampson is not entitled to habeas relief on this claim.

## I.      Ground 26

Sampson alleges ineffective assistance of counsel for tarnishing his credibility by advising him to plead not true to the enhancements about which he had just elicited testimony. (Docket Entry No. 1, p. 10).

McDougal provided an affidavit to the state habeas court in which he testified as follows:

> Allegation: I tarnished applicant's credibility by eliciting testimony that he had been previously convicted while still advising him to plead "not true" to the enhancement allegations.
>
> Answer: In my opinion, it is better when an individual who has prior convictions admit them on direct examination rather than on cross examination, if he decides to testify. Every person who testifies before a jury may be impeached by the State for prior convictions. In this case, the applicant had numerous prior convictions which I addressed by way of motion to the Court to not allow the State to use them for impeachment purposes. The Court agreed with my motion with the exception of one conviction. After consulting with applicant about the pros and cons of him testifying, and him understanding that the one conviction would be admissible, and that we would address it on his direct testimony rather than allowing the State to do it on their cross-examination, the applicant decided to testify.
> I advised him to plead "not true" to the enhancement allegations in his indictment because I did not feel they were legally admissible to enhance his punishment. I addressed such by way of motion to the Court to not [sic] them in evidence. This had nothing to do with the applicant's credibility.
> I do not feel that my actions were inconsistent, nor did they prejudice the applicant in any way.

(Docket Entry No. 12-12, p. 4).

The state habeas court concluded:

"14. McDougal was not ineffective for encouraging the applicant to plead not true to the enhancement allegations because it was the applicant's choice to testify, and he could have exercised his right to remain silent." (Docket Entry No. 12-13, p. 52).

Sampson cannot establish an ineffective assistance of counsel claim because he has not shown that McDougal's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 68 (1984). This court's scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. This court gives McDougal's informed strategic decisions a heavy measure of deference and will not second-guess them. Sampson is not entitled to habeas relief on this claim.

## V.     The Claim of Ineffective Assistance of Appellate Counsel

## (Grounds 1, 4, 6, 14 & 19)

Sampson complains that appellate counsel rendered ineffective assistance by failing to raise several issues on appeal. (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, pp. 6-9).

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *See Evitts v. Lucey,* 469 U.S. 387 (1985). This court reviews counsel's appellate performance under *Strickland v. Washington,* 466 U.S. 668 (1984). *See Goodwin v. Johnson,* 132 F.3d 162, 170 (5th Cir. 1998). Sampson must allege and present facts that, if proven, would show that his attorney's representation was deficient and that the deficient performance caused Sampson prejudice. *See Strickland,* 466 U.S. at 687-88, 692; *Jones v. Jones,* 163 F.3d 285, 300 (5th Cir. 1998).

The first element requires Sampson to show that his appellate counsel's conduct "fell below an objective standard of reasonableness." *United States v. Williamson,* 183 F.3d 458, 463 (5th Cir.

1999)(quoting *Strickland,* 466 U.S. at 688). This court's review is deferential, presuming that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Effective assistance of appellate counsel does not mean counsel will raise every available nonfrivolous ground for appeal. *See Evitts,* 469 U.S. at 394; *West v. Johnson,* 92 F.3d 1385, 1396 (5th Cir. 1996). Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *See Evitts,* 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *See Strickland,* 466 U.S. at 690-91.

To show prejudice, Sampson must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jones,* 163 F.3d at 302 (quoting *Strickland,* 466 U.S. at 694). Such a reasonable probability makes the proceeding unfair or unreliable, so as to undermine confidence in the outcome. *Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir. 1998)(citing *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993)).

To prove that counsel's performance was deficient, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" based on "an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster,* - U.S. - , 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland,* 466 U.S. at 690). Although this standard requires counsel to assert "[s]olid, meritorious arguments based on directly controlling precedent," *United States v. Conley,* 349 F.3d 837, 841 (5th Cir. 2003) (quoting *United States v. Phillips,* 210 F.3d 345, 348 (5th Cir. 2000)) (internal quotation marks omitted), it does not mandate that counsel

"raise every nonfrivolous ground of appeal available." *Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Evitts v. Lucey,* 469 U.S. 387, 394 (1985)).  When, as here, counsel files a merits brief, a defendant generally must show that "a particular nonfrivolous issue was clearly stronger than issues counsel did present." *Smith v. Robbins,* 528 U.S. 259, 288 (2000).  "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington v. Richter,* - U.S. - , 131 S. Ct. 770, 790 (2011) (quoting *Yarborough v. Gentry,* 540 U.S. 1, 8 (2003) (per curiam)).

The court will consider Sampson's claims of ineffective assistance of appellate counsel.

## A.      Ground 1

Sampson alleges ineffective assistance of appellate counsel for failing to raise the issue of ineffective assistance of trial counsel for failing to challenge the enhancements. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 6); (Docket Entry No. 9, Memorandum, pp. 1-44).  He believes that they should have been challenged on the basis that one of the prior convictions was not sufficiently linked to him and because they were not properly sequenced pursuant to Texas Penal Code § 12.42(d). *Id.*

Sampson raised this issue on appeal, and the Ninth Court of Appeals rejected it, stating:

> ENHANCEMENT
> In issue two, Sampson argues the State failed to adequately link him
> to one of the judgments of conviction used for enhancement purposes
> during the trial's punishment phase. To prove a defendant has a prior
> conviction, the State must establish that the prior conviction exists
> and that it is linked to the defendant. *Flowers v. State,* 220 S.W.3d
> 919, 921 (Tex. Crim. App. 2007). No specific mode of proof is
> required to prove these elements. *Id.* The conviction must be proved
> beyond a reasonable doubt for the trier of fact to find an enhancement
> to be true. *Id.* at 923; *see also Beck v. State,* 719 S.W.2d 205, 210
> (Tex. Crim. App. 1986). The consideration of non-constitutional

error, if any, is addressed in rule 44.2(b) of the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 44.2(b); *Barshaw v. State,* 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). A non-constitutional error must be disregarded unless the defendant's substantial rights are affected. *Barshaw,* 342 S.W.3d at 93. A substantial right is affected under rule 44.2(b) when the error has a substantial and injurious effect or influence. *Mason v. State,* 322 S.W.3d 251, 255 (Tex. Crim. App. 2010). A criminal conviction should not be reversed for non-constitutional error if the reviewing court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Barshaw,* 342 S.W.3d at 93.

Sampson challenges State's Exhibit 38, which contains an indictment and a judgment bearing the name Vernon E. Johnson (with no listed alias) and a birth date of June 14, 1964. This exhibit does not contain a fingerprint or a photograph. The State points to exhibits containing other judgments of conviction (some showing Charles Sampson with the alias of Vernon E. Johnson or variations of that name). The State references Exhibit 39, which contains fingerprint cards for a Charles Earl Sampson with a birth date of May 14, 1963, along with a booking photo of Charles E. Sampson, also known as Vernon Johnson, purportedly taken a day after the robbery arrest in Exhibit 38. The State argues this evidence allowed the jury to infer that Sampson was the same person (Vernon E. Johnson) arrested on September 17, 1981, booked on September 18, 1981, and convicted less than a month later. Notably, the Charles Sampson in Exhibit 39 has a different birth date from the Vernon E. Johnson in Exhibit 38.

Sampson argues he was harmed by the admission of the 1981 robbery conviction, because it was the only conviction admitted during the punishment phase that reflected a violent offense. Mark Wright, a crime scene investigator and latent print examiner for the Montgomery County Sheriff's Office, testified to five prior judgments, including the robbery conviction. He did not reference the use of any weapon in testifying to the robbery conviction. No other witness at the punishment hearing mentioned the robbery offense. The prosecutor read the enhancements (including the robbery conviction) to the jury, and in closing argument, the prosecutor stated that Sampson was a serial burglar and thief; the prosecutor did not mention a weapon. The record does not show an emphasis on the robbery conviction.

Sampson argues the life sentence is premised on a finding that Enhancement Paragraph D (robbery conviction) is true. Under section 12.42(d) of the Texas Penal Code, if at least two of the convictions are in proper sequence, Sampson's convictions are elevated to the

range of punishment of life, or 25 years to 99 years. *See* Tex. Penal Code Ann. § 12.42(d) (West 2011). Four other convictions were admitted without objection. Two of those four enhancements permitted the jury to assess a life sentence.

Any error in the use of the robbery conviction was harmless. We overrule issue two.

## SEQUENCE OF CONVICTIONS

In a supplemental brief, Sampson argues the evidence is legally insufficient to prove that the convictions were in proper sequence for enhancement purposes. Section 12.42(d), set out below, is the applicable statute for enhancement:

> Except as provided by Subsection (c)(2), if it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

Tex. Penal Code Ann. § 12.42(d). Once the State provides prima facie evidence of a prior conviction, an appellate court presumes the conviction is final with a silent record regarding finality. *See Fletcher v. State,* 214 S.W.3d 5, 8 (Tex. Crim. App. 2007). The record demonstrates that Sampson had four prior felony convictions in addition to the robbery conviction. The jury answered "true" to Enhancement Paragraph A (the 1993 burglary-of-a-habitation conviction). In the 1993 conviction, the record reflects there was no probation and the appellate court's mandate issued in December 1995. The jury answered "true" to Enhancement Paragraph C, the August 23, 1984 conviction for burglary of a habitation. The record reflects there was no probation ordered, and the appellate court issued its mandate in June 1985. A conviction from which an appeal has been taken is final for the purposes of punishment enhancement when the court of appeals issues its mandate. *See Beal v. State,* 91 S.W.3d 794, 796 (Tex. Crim. App. 2002). The findings of true to Enhancement Paragraphs C and A meet the sequential requirement of section 12.42(d):

the defendant has previously been finally convicted of two felony offenses (burglary of a habitation in 1984 and burglary of a habitation in 1993), and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having

become final. We overrule this issue. The trial court's judgment is affirmed.

*Sampson v. State,* No. 09-11-00247-CR, 2012 WL 34457, at **3-4 (Tex. App. -- Houston [9th Dist.] 2012, pet. ref'd)(not designated for publication).  The evidence was legally sufficient to prove that the convictions were in proper sequence for enhancement purposes.  The enhancements were linked to Sampson.  The jury found Enhancement Paragraphs C and A to be true.  These enhancement paragraphs satisfied the sequential requirement of section 12.42(d).  Sampson had previously been finally convicted of two felony offenses (burglary of a habitation in 1984 and burglary of a habitation in 1993), and the second previous felony conviction was for an offense that occurred subsequent to the first previous conviction having become final.  There was no basis to challenge the enhancement paragraphs.  Absent error in the enhancement paragraphs, McDougal had no grounds to object.

The record shows that appellate counsel argued that the trial court committed error in three respects: the trial court erred in the admission of an unadjudicated extraneous offense during the guilt/innocence phase of the trial; the trial court erred in admitting one of the prior convictions; and the trial court erred in admitting prior convictions that did not satisfy the sequencing requirements of § 12.42. (Docket Entry No. 11-1, Brief for Appellant, p. 3).  Appellate counsel made a tactical decision not to challenge the ineffective assistance of trial counsel on appeal.  Sampson has not shown that this issue was clearly stronger than issues appellate counsel did present.  Sampson is not entitled to habeas relief on this claim.

**B.     Ground 4**

Sampson alleges that appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel for eliciting harmful testimony that he was on parole and had been to

prison. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 7; Docket Entry No. 9-3,

Memorandum, pp. 1-4).

Frazior provided an affidavit to the state habeas court in which she testified as follows:

> I did not consider a claim of ineffective assistance of trial counsel to
> be a viable issue for direct appeal. I researched both the law on
> ineffective assistance and the underlying issues which make the basis
> of applicant's claim for ineffective assistance. My research revealed
> that pursuant to *Thompson v. State,* 9 S.W.3d 808 (Tex. Crim. App.
> 1999), a claim for ineffective assistance of counsel is best litigated in
> a writ of habeas corpus because the record is rarely developed
> sufficiently on direct appeal to provide trial counsel's rationale.
> Therefore the appellate court is prevented from making a fair
> evaluation of the merits of an ineffective assistance claim on direct
> appeal. Further, a review of the record showed that trial counsel
> preserved numerous issues regarding the enhancements through a
> timely objection at trial and two of these issues were ultimately
> briefed for appeal at the request of applicant.

(Docket Entry No. 12-12, p. 12).

The state habeas court found: "4. Frazior did not raise a claim of ineffective assistance of

counsel on direct appeal because she believed that such arguments would not be looked upon

favorably by the appellate court." (Docket Entry No. 12-13, p. 50).

The state habeas court concluded:

> 3.      Frazior was not ineffective for failing to raise a claim of
> ineffective assistance of counsel on direct appeal, as the record was
> not properly developed to bring such a claim and the appellate court
> would not have looked favorably on such a claim. *See Lopez v. State,*
> 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).
> . . .
> 20. The record does not support the applicant's claim that the State
> improperly referenced parole law during the guilt/innocence phase of
> trial, and any claim raising such an error should be disregarded.

(Docket Entry No. 12-13, pp. 51, 53).

McDougal made a tactical choice to elicit testimony concerning Sampson's parole status on direct examination of Sampson. McDougal reasoned that allowing the prosecutor to cross-examine Sampson about his parole status would have been more damaging for Sampson's credibility. Sampson has not shown that this issue was clearly stronger than issues appellate counsel did present. *Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Sampson is not entitled to habeas relief on this claim.

## C.    Ground 6

Sampson alleges ineffective assistance of appellate counsel for improperly arguing an illegally admitted unadjudicated extraneous offense. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 8; Docket Entry No. 9-4, Memorandum, pp. 6-18).

Frazior provided an affidavit to the state habeas court in which she testified as follows:

> I chose to argue that the Court erred in ruling that defense counsel opened the door to an extraneous unadjudicated offense because the error on this issue was preserved through a proper and timely objection by trial counsel. There was no objection to the State's earlier attempt to draw out the same evidence through the defendant's testimony on cross examination because the questioning did not elicit the harmful evidence of the extraneous unadjudicated offense. My research indicated that there was ample case law to support our position if framed from this perspective.

(Docket Entry No. 12-12, p. 13).

The state habeas court found: "5. The defense was not goaded into opening the door to the applicant's previous convictions." (Docket Entry No. 12-13, p. 50).

The state habeas court concluded:

> 4.    Even if the[sic] Frazior framed her argument regarding the admission of extraneous evidence in terms of the State goading the defense into opening the door to the evidence, such an argument

> would not have been successful on appeal. *See Ex parte Santana,* 227
> S.W.3d 700, 704-05 (Tex. Crim. App. 2007).

(Docket Entry No. 12-13, p. 51).

Sampson has not shown that this issue was clearly stronger than issues appellate counsel did

present. *Smith v. Robbins,* 528 U.S. 259, 288 (2000). Sampson is not entitled to habeas relief on

this claim.

### D.    Ground 14

Sampson alleges ineffective assistance of counsel on appeal for failing to argue the preserved

error concerning State's Exhibit 40. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9).

Sampson asserts that Exhibit 40, a penitentiary packet, was not certified.

In his affidavit to the state habeas court, McDougal testified:

> 5.    Allegation: I failed to object to the State's offer of a pen
> packet that was not certified.
> Answer: I did make objections to all of the State's pen
> packets, including State's Exhibit 40. I cannot remember the exact
> objections I made, but most of them had to do with the pen packets
> not being connected to the applicant. I cannot remember if I made an
> objection to State's Exhibit 40 specifically because it was not
> certified, because it was certified.

(Docket Entry No. 12-12, p. 5).

A review of the penitentiary packet, State's Exhibit 40, shows that it was certified. (Docket

Entry No. 12-1, p. 37). The state habeas court found, "10. The penitentiary packet offered as State's

exhibit 40 was properly certified and authenticated." (Docket Entry No. 12-13, p. 52). Had appellate

counsel raised this issue on appeal, it would have failed. Sampson has not shown that this issue was

clearly stronger than issues appellate counsel did present. *Smith v. Robbins,* 528 U.S. 259, 288

(2000). Sampson is not entitled to habeas relief on this claim.

E.     **Ground 19**

Sampson alleges ineffective assistance of counsel on appeal for failing to argue the Texas

Penal Code Section 12.42(d) issue, that the jury had to find two of the previous paragraphs true.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9).

> Frazior provided an affidavit to the state habeas court in which she testified as follows:

>> I considered briefing the complained of jury charge error as a point of
>> error on appeal. I ultimately rejected this issue because a review of
>> the jury charge showed that the verdict language clearly and correctly
>> stated the applicable punishment ranges and the findings the jury
>> needed to make to reach each range. Further, the jury found all five
>> enhancement paragraphs true. Therefore this did not seem like a
>> viable issue for appeal.

(Docket Entry No. 12-12, p. 13).

The state habeas court found: "6. Frazior considered arguing that the jury charge was

ambiguous or vague, but decided against it as a review of the charge "showed that the verdict

language clearly and correctly stated the applicable punishment ranges and findings the jury needed

to make to reach each range."" (Docket Entry No. 12-13, p. 50).

The state habeas court concluded: "5. Frazior was not ineffective for refusing to raise an issue

regarding the wording of the jury charge on direct appeal, because there is no error in the charge

wording." (Docket Entry No. 12-13, p. 51).

Sampson has not shown that this issue was clearly stronger than issues appellate counsel did

present.  *Smith v. Robbins,* 528 U.S. 259, 288 (2000).  Sampson is not entitled to habeas relief on

this claim.

The state habeas court found that appellate counsel rendered effective assistance.  (Docket

Entry No. 12-13, p. 50, Findings 3, 4, & 6).  The Court of Criminal Appeals implicitly based its

denial of habeas relief on these findings.   These determinations are entitled to a presumption of correctness.  28 U.S.C. § 2254(e)(1).  Sampson has not produced clear and convincing evidence to rebut these findings.  The state court's decision as to the effective assistance of appellate counsel reasonably applied the law to the facts, consistent with clearly established federal law.  Sampson has not shown a basis for the relief he seeks.  28 U.S.C. § 2254(d)(1).

## VI.    The Claims Based on Trial Court Error

### (Grounds 7, 9, 10, 11, 16, 22, & 23)

Sampson asserts that the trial court errors rendered the proceedings against him unfair.

When a federal court reviews state court evidentiary rulings on a petition for habeas corpus, it will grant relief only if the state court error is sufficiently egregious as to render the entire trial fundamentally unfair. *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied,* 508 U.S. 978 (1993).  "A state court's evidentiary ruling presents a cognizable habeas claim only if it runs afoul of a specific constitutional right or renders the trial fundamentally unfair."  *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994), *cert. denied,* 513 U.S. 1163 (1995).  The challenged evidence must be a crucial, critical, or highly significant factor in the context of the entire case. *Jernigan v. Collins*, 980 F.2d at 298; *Bridge v. Lynaugh,* 838 F.2d at 772; *Thomas v. Lynaugh,* 812 F.2d 225, 230 (5th Cir.), *cert. denied*, 484 U.S. 842 (1987).  The test to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *See Guidroz v. Lynaugh,* 852 F.2d 832, 835 (5th Cir. 1988); *Rogers v. Lynaugh,* 848 F.2d 606, 609 (5th Cir. 1988).

A.    **Ground 7**

Sampson complains that the trial court abused its discretion in admitting an illegal unadjudicated extraneous offense. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 8). Sampson refers to admission of testimony about a theft that allegedly took place at the Babbitt household.  On cross-examination, the prosecutor elicited testimony that Sampson was asked to leave the Babbitt household because items were missing, and they suspected Sampson of stealing.

"When one reasoned state court decision rejects a federal claim, subsequent unexplained orders upholding that judgment or rejecting the same claim are considered to rest on the same ground as did the reasoned state judgment." *Bledsue v. Johnson,* 188 F.3d 250, 256 (5th Cir. 1999). This "look through" doctrine enables a federal habeas court "to ignore—and hence, look through—an unexplained state court denial and evaluate the last reasoned state court decision." *Id.; see also Renz v. Scott,* 28 F.3d 431, 432 (5th Cir. 1994) (finding that the denial of relief "on the findings of the trial court" by the Texas Court of Criminal Appeals adopts an express finding by the trial court that a claim was procedurally barred from habeas review); *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

In this case, the Ninth Court of Appeals rejected Sampson's claim.  Because the Ninth Court of Appeals issued the last reasoned opinion on this matter, this court "looks through" the Texas Court of Criminal Appeals' order to the appellate court's decision.

The Ninth Court of Appeals found:

> In issue one, Sampson argues the trial court erred in admitting evidence of an unadjudicated extraneous offense. The State asked Babbitt on cross-examination about a police report containing

allegations that Sampson stole items from the Babbitt home. Sampson contends this evidence was offered to show he was a criminal. He argues that the State attempted to convert Babbitt, a defense fact witness, into a character witness for the purpose of impeaching him with specific acts of bad conduct. *See Wheeler v. State,* 67 S.W.3d 879, 883 (Tex. Crim. App. 2002).The State argues Sampson did not preserve the evidentiary challenge for appeal. We disagree. Although appellant's trial objection may not have been as precise as it could have been, it is apparent from the record that the trial court was aware of Sampson's complaint and ruled on the objection. *See* Tex. R. App. P. 33.1(a); *see generally Berry v. State,* 233 S.W.3d 847, 857 (Tex. Crim. App. 2007).

A trial court's decision to admit evidence is reviewed on appeal under an abuse of discretion standard. *See Bowley v. State,* 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). The reviewing court considers whether the ruling is within the zone of reasonable disagreement. *See De La Paz v. State,* 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). If the trial court was correct under any theory of law applicable to the case, the appellate court will uphold the trial court's ruling. *Bowley,* 310 S.W.3d at 434.

Appellant argues the general rule that a defendant is not to be tried for collateral crimes or "for being a criminal generally." *See Segundo v. State,* 270 S.W.3d 79, 87–88 (Tex. Crim. App. 2008). At the guilt-innocence phase of the trial, extraneous offenses are not admissible to prove that a defendant acted in conformity with his character by committing the charged offense. *Id.* Evidence of other crimes or extraneous misconduct may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b); *Williams v. State,* 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). Rebuttal of a defensive theory is a permissible purpose for which evidence may be admitted under Rule 404(b). *Id.; see also Powell v. State,* 63 S.W.3d 435, 438–39 (Tex. Crim. App. 2001). Moreover, evidence offered by a party may be admitted when the other party "opens the door" to the otherwise inadmissible evidence. *Williams,* 301 S.W.3d at 687. Essentially, a party's attempt to leave a false impression with the jury effectively invites the response. *Hayden v. State,* 296 S.W.3d 549, 554 (Tex. Crim. App. 2009).

The defendant put his relationship with the Babbitts and the living arrangement at issue. The impression left upon the jury through Babbitt's initial testimony—that he permitted Sampson to live with them and that he did not "kick" Sampson out of the Babbitts' home—is that the Babbitts trusted Sampson enough to allow him to

come live with them. The reason Sampson left was portrayed as innocuous. The defendant opened the door to the prosecutor's questions on whether Babbitt asked Sampson to leave and why. *See generally Bass v. State,* 270 S.W.3d 557, 558, 563 (Tex. Crim. App. 2008) (Defensive theory that pastor "was 'the real deal and the genuine article' and that teenager's allegations were pure fantasy" was subject to rebuttal by State's extraneous offense evidence of pastor's having sexually assaulted two other girls in his church office.); *Powell v. State,* 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (Extraneous offense evidence had non-character conformity relevance where it served to rebut appellant's defensive theory that he had no opportunity to commit the offense because he was never alone with the complainant.). The trial court's decision to admit the evidence was within the zone of reasonable disagreement. We overrule issue one.

*Sampson v. State,* No. 09-11-00247-CR, 2012 WL 34457, at **1-2 (Tex. App. -- Houston [9th Dist.] 2012, pet. ref'd)(not designated for publication).

Sampson is not entitled to habeas relief on this claim.

**B.    Ground 9**

Sampson alleges that the trial court abused its discretion for illegally stacking his sentence without notice. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 8). Texas Code of Criminal Procedure Section 42.08(b) provides in relevant part as follows:

> (b) If a defendant is sentenced for an offense committed while the defendant was an inmate in the Texas Department of Criminal Justice and serving a sentence for an offense other than a state jail felony and the defendant has not completed the sentence he was serving at the time of the offense, the judge shall order the sentence for the subsequent offense to commence immediately on completion of the sentence for the original offense.

TEX. CODE CRIM. PROC. ANN. art. 42.08(b).

Sampson was sentenced according to Texas law.  Sampson is not entitled to habeas relief on this claim.

### C.      Grounds 10, 11, & 16

Sampson alleges the trial court abused its discretion by allowing an ambiguous double "standard verdicts." (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 8).  In claim 11, Sampson claims trial court abuse of discretion for allowing three different extraneous offenses in one single episode whereas the petitioner did not testify at punishment. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 8-9).  In claim 16, Sampson alleges trial court abuse of discretion for allowing inconsistent material witness statements versus trial testimony. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 9).  These claims are illogical and conclusory.

Sampson is not entitled to habeas relief on these claims.

### D.      Ground 22

Sampson alleges trial court abuse of discretion for denying the defense motion for an instructed verdict on the basis that the State failed to prove intent to commit theft. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 10).  This claim is also conclusory.

Sampson is not entitled to habeas relief on this claim.

### E.      Ground 23

Sampson alleges that the trial court abused its discretion in allowing the law of parole to be discussed during guilt/innocence. (Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 10; Docket Entry No. 9-5, Memorandum, pp. 11-15).  The following exchange took place outside the presence of the jury after the state had rested:

> THE COURT:        Also, as to the issue that you raised about the remoteness of the convictions under 609(B), I have looked it up and there is a test. Basically we talked about it. And after reviewing and doing a balancing test, I am going to find that I believe the latest conviction -- since he was paroled, it is my understanding in 2009 -

and he is still under -- he is still on parole, that I am going to allow it if it meets the criterion set out in 609.

You have to look at the impeachment value of the prior crime. Due to the fact that the prior crime is a crime of moral turpitude it should be felony, that measured into it. The temporal proximity of the past crime relative to the charged offense -- the fact that he was paroled in 2009 is within ten years. The similarity between the past crime and the offense being prosecuted -- they are similar, which can rise and create a problem and prejudice, and that also factored into my balancing test. And I think it is outweighed by the other factors.

The prior two are the importance of the Defendant's testimony and the importance of the credibility issue. I think your defense is raising some issues that I think also play into my balancing test. So at this time I am kind of inclined to allow the prior. I can't make a decision until I hear the rest of the case. You are --

MR. McDOUGAL: Well, they have rested. I will -- if you tell me you are overruling it, then I will call him for purposes of the record only to make a bill of exception.

THE COURT: Let me see the other witnesses you have, and then I will take them into account in my balancing test. But I just wanted to -- since we are outside the presence of the jury and we are currently waiting for your witness, I thought I would take the opportunity to state on the record that I have been looking at these factors.

I also looked at this case called *Buffington versus State.* Even though technically the conviction is within ten years, the other measure is that, to be admissible, the probative value of older convictions must substantially outweigh their unfair prejudicial effect. And there are several cases I looked at.

And even under that harsher, higher standard, I do believe that the balancing test -- I am probably inclined to allow the State to go into them for purposes of the record.

MS. CULBERSON: Judge, he does have some other priors that are older than that. And under the tacking rule, will I be allowed to go into those?

THE COURT: No. I am probably just going to allow you to do the one.

MS. CULBERSON: Thank you.

THE COURT: I will limit it to that.

MR. McDOUGAL: So just the one in '93?

THE COURT: Yes.  The one he had just been paroled on.

MR. BLACKBURN: Judge, normally we would also be asking -- normally we are allowed to get in the fact that he was convicted on this date for this offense out of another county. Basically, that is it. But we are basically going to be asking to get into it in this case.   I think it is relevant because it goes to show bias, as to why he would be truthful or not because he is on lifetime parole.

So we would be asking to also to get into that, or at least that he is currently still on parole for that offense.

THE COURT: You are probably right, but I am not going to allow it. Because I am concerned enough about the balancing test and the possibility of getting this case reversed that I think it would be prudent. And to be on the safe side -- which of course when I was in your position I did not like that; but now that I am in this position, it changes things -- I am probably going to allow you to point it out to the jury if he takes the stand. But I will not allow you to go into the circumstances until the punishment phase, if we reach it.

(Docket Entry No. 11-12, pp. 94-98)

Nothing in the record supports Sampson's claim that parole law was discussed during the guilt-innocence phase of trial.  Sampson asserts that defense counsel and the prosecutor improperly questioned him about the fact that he was on parole at the time of the offense.  McDougal made a tactical choice to elicit testimony from Sampson that he was on parole.  Sampson chose to testify, and McDougal warned him that evidence of his parole status was admissible for impeachment purposes.  Sampson is not entitled to habeas relief on this claim.

### F.        Grounds 17, 20, & 21

Sampson indicates claims 17, 20, & 21 are the "same as" claims 10, 17, and 12.  Because the court has previously analyzed these claims, the court will not address them again separately.

Sampson has failed to show that the trial court's alleged errors rendered his trial fundamentally unfair or that there is a reasonable probability that the verdict would have been different had the trial been conducted properly. Any such error was harmless under *Brecht v. Abrahamson,* 507 U.S. at 623 (Federal habeas relief requires a showing that a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict."). There was overwhelming evidence against Sampson. He has failed to raise an issue as to whether any of the alleged trial court errors had an injurious effect or influence on the jury's verdict. Sampson has failed to show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

Sampson is not entitled to federal habeas relief on this claim.

## VII.    The Claim Based on Appellate Court Error

### (Ground 2)

Sampson alleges that the appellate court abused its discretion in ruling that the State had proven the Texas Penal Code Section 12.42(d) requirement. (Docket Entry No. 1, p. 6; Docket Entry No. 9-1, pp. 1-4). Section 12.42(d) states:

> . . . if it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

TEX. PENAL CODE (West 2014).

The indictment alleged five prior felonies for enhancement purposes. The jury found all five enhancement paragraphs to be true. The appellate court addressed whether the enhancements were proper under Section 12.42(d). The appellate court determined that the enhancement paragraphs satisfied the statutory requirements of Section 12.42(d). Sampson argues that the jury was required to state which enhancements they were relying on to meet the 12.42(d) enhancement requirements. Given that the jury found all of the enhancement paragraphs to be true, it was not necessary for the jury to specify which of the five enhancement paragraphs it found true.

Sampson is not entitled to habeas relief on this claim.

## VIII.   The Claim Based on Prosecutorial Misconduct

### (Grounds 8 & 13)

For purposes of determining whether there has been prosecutorial misconduct, the Supreme Court has stated that "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). A trial is fundamentally unfair "if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Riddle v. Cockrell,* 288 F.3d 713, 720 (5th Cir. 2002) (internal quotation marks omitted).

### A.      Ground 8

Sampson alleges prosecutorial misconduct for suppressing evidence by denying him a witness's identity and the ability to subpoena witnesses. (docket Entry No. 1, p. 8). This claim is conclusory. Sampson is not entitled to habeas relief on this claim.

**B.      Ground 13**

Sampson alleges prosecutorial misconduct for making the jury promise to convict. (Docket Entry No. 1, p. 9). The record provides no support for this claim. The prosecutor only asked the jury to listen to all of the evidence before rendering a verdict. Sampson has not shown that the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process. Nor has Sampson shown that there was a reasonable probability that the verdict might have been different had the trial been properly conducted.

Sampson is not entitled to habeas relief on this claim.

**IX.     Conclusion**

Respondent's Motion for Summary Judgment, (Docket Entry No. 17), is GRANTED. Sampson's petition for a writ of habeas corpus is DENIED. This case is DISMISSED. Any remaining pending motions are DENIED as moot.

Under the AEDPA, a petitioner must obtain a certificate of appealability from a district court's denial of habeas relief. 28 U.S.C. § 2253(c)(2). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322 (2003)(citing 28 U.S.C. § 2253(c)(1)). A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (citation and internal quotation marks omitted). "This threshold inquiry does not require full consideration of the

factual or legal bases adduced in support of the claims." *Miller-El v. Cockrell*, 537 U.S. at 336. Rather, "'[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Id.* at 338 (citing *Slack v. McDaniel,* 529 U.S. 473, 484).

A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). The court finds that Sampson has not made "a substantial showing of the denial of a constitutional right," and will not issue a certificate of appealability.

SIGNED at Houston, Texas, on March 25, 2015.

VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE